UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SABETTI CONSTRUCTION, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:23-cv-00472-JJM-LDA |
| SINGLEPOINT, INC. | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**PLAINTIFF SABETTI CONSTRUCTION, INC.'S
MOTION FOR DEFAULT JUDGMENT AND ASSESSMENT OF DAMAGES**

Plaintiff Sabetti Construction, Inc. ("Sabetti") respectfully requests that default judgment be entered pursuant to Fed. R. Civ. P. 55(b)(2) in the above-captioned action against Defendant SinglePoint, Inc. ("SinglePoint"). As grounds, Sabetti states that (i) a default was entered against SinglePoint on December 23, 2023, (ii) SinglePoint has failed to Answer or otherwise defend against the claims set forth in the Verified Complaint, and (iii) SinglePoint is a Nevada corporation and is therefore not in the military service as set forth in 50 U.S.C. §§3901, *et seq*. Sabetti asserts that its claims are for a sum certain. In further support of this request, Sabetti submits the accompanying affidavit of its attorney, Hillary J. Garland, attached hereto as Exhibit A and states the following:

**II.     Statement of Facts**

On January 9, 2023, Sabetti entered into a Letter of Intent ("LOI") with SinglePoint for its purchase of Sabetti's stock for three million dollars ("Transaction"). Pursuant to Paragraph XII of the LOI, the closing was to take place on May 10, 2023 ("Closing Date"). Pursuant to Paragraph VI of the LOI, SinglePoint represented that it required financing through a registered public

offering, which was "expected to be completed prior to Closing [Date] of the transaction," or SinglePoint could choose to utilize bridge financing. Sabetti also agreed to an exclusive negotiating period set forth in Paragraph XIV of the LOI, which provided, in relevant part, that for a period of 120 days (i.e. the Closing Date) Sabetti was not entitled to "negotiate with or provide any information to any other parties for the purposes of investing in [Sabetti], raising capital or related to the purchase and sale of any interests in [Sabetti] or any assets of [Sabetti]" ("Exclusivity Clause").  In exchange for Sabetti's agreement to the Exclusivity Clause, and in lieu of a deposit on the Transaction, SinglePoint issued $50,000 of stock to Sabetti.

Following the execution of the LOI, in April of 2023, SinglePoint indicated that it would prefer an asset sale of Sabetti and negotiations commenced in the drafting of an asset purchase agreement ("APA").

As the Closing Date approached, SinglePoint informed Sabetti that it was unable to close the Transaction on the Closing Date due to challenges with financing, but assured Sabetti that it was working diligently to close the financing gap. Based on SinglePoint's representation and assurance that it was intent on closing the Transaction, Sabetti continued to negotiate the APA and prepared the necessary documents for closing. However, as SinglePoint was unable to obtain financing, it proposed an amendment to the LOI, which only modified Section XII of the LOI ("First Amendment").

The First Amendment modification provided that the parties were aiming for a May 19, 2023 date to sign the APA, but had until June 12, 2023 to complete same. The First Amendment did not revive or extend the Exclusivity Clause, which lapsed on May 10, 2023. Following the execution of the First Amendment, SinglePoint continued to make affirmative representations that it was working in good faith towards finalizing (i) the APA, and (ii) the closing documents, to

close the transaction as contemplated within the timeframe set by the First Amendment. Based on SinglePoint's representations, the parties began negotiations for a second amendment to the LOI, which was intended only to extend the Exclusivity Clause. However, despite the First Amendment, SinglePoint again failed to secure the necessary financing to close on June 12, 2023, but also failed to submit the necessary filings to the SEC for the Transaction.

Then, on or about June 22, 2023, SinglePoint circulated a proposed second amendment to the LOI ("Second Amendment"). Pursuant to the Second Amendment, the closing date was amended to July 14, 2023 ("Amended Closing Date"). Additionally, Paragraph V of the Second Amendment provides that "SinglePoint shall pay to [Sabetti] $100,000.00 (the "Break Up Fee") within thirty (30) business days" should SinglePoint fail to close by the Amended Closing Date. Further, pursuant to Paragraph II of the Second Amendment, the Exclusivity Clause was extended to be contemporaneous with the Amended Closing Date. Given Sabetti's growing frustration and distrust of SinglePoint, in exchange for Sabetti's execution of the Second Amendment extending the closing date and exclusivity period, pursuant to Paragraph III of the Second Amendment, SinglePoint promised to "issue to [Sabetti] shares of SinglePoint's stock worth $100,000.00 based upon the last closing price of SinglePoint's stock …" within seven (7) days of execution of the Second Amendment, i.e. by June 29, 2023. Further, the Second Amendment provided that if SinglePoint "fails to issue the stock [by June 29, 2023] … [Sabetti] shall have the option to terminate the LOI at which time this Second Amendment shall be void except for SinglePoint's obligations to pay the Break Up Fee…"

Reluctantly, Sabetti executed the Second Amendment on June 22, 2023.
SinglePoint's Failure to Issue Stock in Accordance with Second Amendment. Despite its promise to issue $100,000.00 worth of stock to Sabetti within seven (7) days of executing the Second

Amendment, SinglePoint failed to do so by June 29, 2023. This proved to be false, as SinglePoint was restricted from issuing stock, because its SEC filing was pending. As a result of its failure to issue the $100,000.00 worth of stock by June 29, 2023, the Second Amendment was rendered void, except for SinglePoint's obligation to pay the Break Up Fee.

Thereafter, Sabetti made repeated requests for SinglePoint to issue the promised stock, but SinglePoint simply failed to do so. However, on August 4, 2023, SinglePoint issued some stock to Sabetti, which failed to monetize and is worthless.

Following the execution of the Second Amendment, SinglePoint repeatedly contacted Sabetti providing excuses for its failure (i) to complete its filings with the SEC, (ii) to raise money through existing investors, and (iii) secure financing to close on the Transaction. In response to Sabetti's request for reassurance from SinglePoint as to its ability to close the Transaction, SinglePoint represented that it was receiving "final approval" from a bank on July 6 and that it was close to raising $1 million to help close the Transaction. However, on July 10, 2023, SinglePoint informed Sabetti that it was not going to be able to close on the Amended Closing Date. Then, on July 13, 2023, SinglePoint advised Sabetti that it "did not know" when it would be able to obtain financing to close the Transaction. The Transaction did not close on the Amended Closing Date and there was no extension of the closing date or the exclusivity period. Additionally, despite its agreement to close on the Amended Closing Date, SinglePoint failed to do so.

Further, despite the explicit requirement to pay Sabetti the Break Up Fee within thirty (30) business days of the Amended Closing Date, if it failed to close, SinglePoint failed to do so. Despite its breach of the Second Amendment, and without any further extension or amendment, the day after the Amended Closing Date, on July 14, 2023, SinglePoint again represented to Sabetti

4

that it was "confident" in its ability to obtain funding to close by August 4, 2023. Sabetti did not agree to a further closing date of August 4, 2023.

On August 4, 2023, SinglePoint contacted Sabetti claiming it was expecting to receive the necessary funding to close that day, but it never received said funding. The Transaction did not close on August 4, 2023. On August 25, 2023, Sabetti issued a demand letter, pursuant to NRS c. 598, to SinglePoint ("Demand"). In response, on August 28, 2023, SinglePoint rejected Sabetti's Demand.

**III.    Procedural History**

On November 10, 2023, Plaintiff commenced this action and SinglePoint was served with the Summons and Complaint in this matter on November 30, 2023.  The time for responding to the Summons and Complaint passed, and SinglePoint failed to serve or file any responsive pleading.  On or about December 23, 2023, Plaintiff filed its Request for Default with this Court, which was entered the same day by this Court.

**IV.    Argument**

**A.    Sabetti is Entitled to Default Judgment on its Claims against SinglePoint.**

Default judgment should enter against Defendant SinglePoint.  Under Fed. R. Civ. P. 55(b)(2), the factual allegations of a complaint are accepted as true for the purposes of establishing the liability of the defaulted parties. *See Queally v. Estate of Hoviss*, 2011 U.S. Dist. LEXIS 139067, *1 (2011).  In its discretion, the Court may enter a default judgment on all claims supported by "well pleaded allegations in [the] … complaint." *SEC v. Locke Capital Mgmt.*, 726 F.Supp.2d 105, 106 (D.R.I. 2010), quoting *Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir. 1976); *see also Ramos-Falcon v. Autoidad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002) (noting it

5

is appropriate to "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.").

Here, Sabetti has alleged five (5) causes of action against SinglePoint and has provided a detailed summary of the facts giving rise to its Verified Complaint in this action. Undoubtedly, Sabetti's Verified Complaint adequately states a cause of action warranting relief.

There is no dispute that the parties entered into and executed the APA and the amendments thereto, which are binding and enforceable. SinglePoint, however, breached the express terms of its contract by failing to (i) close the Transaction on the Amended Closing Date, (ii) pay the Break Up Fee, and (iii) issue $100,000.00 worth of stock. Such action constitutes a breach of contract, as well as a breach of the implied covenant of good faith and fair dealing. *See Bartelheim v. Scott*, 2017 Nev. Dist. LEXIS 1517, *13 (2017), citing *Richardson v. Jones*, 1 Nev. 405, 408 (1865) ("breach of contract is a material failure of a performance of a duty arising under or imposed by an agreement"); *APCO Constr., Inc. v. Helix Elec. Of Nev., LLC*, 509 P.3d (2022) (noting covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other" and finding party breach covenant by acting "contrary to the spirit and purpose of its subcontract").

Making matters worse, SinglePoint not only breached the terms of its contract, but also made numerous misrepresentations to Sabetti that it would be able to close, so that Sabetti would agree to execute the Second Amendment. It is clear, however, that these misrepresentations concerning SinglePoint's ability to secure financing, promise to issue $100,000.00 worth of stock, were made solely to buy SinglePoint additional time, while it had no actual intention to close on the Transaction. *See Nelson v. Heer*, 123 Nev. 217, 225 (Nev. 2007); *Bulbman, Inc.* v. *Nevada Bell*, 108 Nev. 105, 111 (1992) (for claim for intentional misrepresentation party must establish (i)

6

false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (ii) an intent to induce another's reliance, and (iii) damages stemming from the reliance); *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 134 (1978) (negligent representation incorporates requirement that party be engaged in course of business or other position that has pecuniary interest and party supplies false information in guidance of others, upon which recipient justifiably relies).

Moreover, SinglePoint's acts, conduct and omissions, as described *supra*, were unfair, deceptive and willful and in violation of Nevada's deceptive trade practices act. *See* NRS 598.0915(15) ("Knowingly mak[ing] any other false representations in a transaction" is a deceptive trade practice.).

**B.     The Court Should Award Damages for Sabetti and Against Defendant SinglePoint.**

**1.     Sabetti Has Sustained Actual Damages of $200,000.00.**

Sabetti has sustained actual damages in the amount of $200,000.00 as a proximate result of Defendant's breach of contract. *See* Verified Complaint. Sabetti has adequately supported its claims of damages with sufficient evidence to establish its claims. Accordingly, it is appropriate for this Court to enter a default judgment and assess actual damages against SinglePoint in the principal amount of $200,000.00.

**2.     An Award of Treble Damages is Appropriate in this Case**

Defendants' unfair and deceptive conduct in this case is sufficiently egregious to justify an award of multiple damages. The multiple damages provisions of NRS 598.0999 are designed to impose a penalty that varies with the culpability of the defendant. *See* NRS 598.0999. SinglePoint, by virtue of its failure to answer the Verified Complaint, has admitted it engaged in unfair and deceptive conduct. SinglePoint represented to Sabetti that it (i) had the ability to secure financing

to close on the Transaction, and (ii) could issue $100,000 worth of stock to Sabetti, in order to coerce Sabetti and secure repeated extensions of the closing date and the exclusivity clause for more than eight (8) months. These misrepresentations constitute an unfair or deceptive act or practice in trade or commerce in violation of N.R.S. §598. *See Poole v. Nev. Auto Dealership Inv.'s, LLC*, 135 Nev. 280 (2019) (deceptive trade practices include "knowingly" making false or misleading statements, which are material, in that "a reasonable person would attach importance to its existence or nonexistence in determining a choice of action in the transaction in question"). Accordingly, there is more than adequate evidence before the Court to establish the Defendants acted in willful and intentional disregard of known contractual, statutory and/or common law obligations, warranting an award of multiple damages in this action.

### 3. An Award of Attorneys' Fees is Appropriate in this Case

Sabetti is entitled to recover its attorney's fees in this action. *See* NRS 598.0999 (noting reasonable attorney's fees and costs may be awarded when there is finding of willful violation of deceptive trade practices act). As is discussed above, by virtue of its default, Defendant has admitted to engaging in conduct triggering liability under NRS 598. Accordingly, an award of attorneys' fees is warranted and appropriate in this action. Sabetti has submitted the Affidavit of Hillary J. Garland setting forth its reasonable attorneys' fees incurred in this action.

### 4. Prejudgment and Post-Judgment Interest

Sabetti is entitled to recover prejudgment and post-judgment interest at the statutory rate. Pursuant to NRS §17.130(2), prejudgment interest begins to run on the date the suit is served, even if some of the damages accrued after that date. This Court should apply the law as written and award Sabetti prejudgment interest at the rate in accordance with NRS §99.040(1) of 8.25% from November 30, 2023, until date of judgment. Additionally, Sabetti is entitled to post-judgment

interest at the same statutory rate. *See* NRS §108.237. As of January 16, 2024 prejudgment interest in the approximate amount of $2,076.93 has accrued, and interest continues to accrue at the rate of $44.19 per day.

### 5. Costs

Sabetti also is entitled to recover its costs and interest thereon in this action. *See* NRS §17.130; NRS §18.020; *see also Gibellini v. Klindt*, 110 Nev. 1201, 1209 (1994) (holding that costs are recoverable and prejudgment interest on costs is also recoverable). Sabetti has incurred taxable costs in the amount of $402.00 to date in this action. A complete breakdown of the costs is included in the attachment to the Affidavit of Hillary Garland submitted herewith.

## V.   Conclusion

For the foregoing reasons, Sabetti respectfully requests that this Honorable Court (i) enter a default judgment in its favor against SinglePoint, (ii) assess damages in the amount of $200,000.00 against SinglePoint, which sum should be doubled or trebled, and to which should be added an award of attorneys' fees, interest and costs plus statutory interest, and grant such other and further relief as just and proper.

PLAINTIFF,

**SABETTI CONSTRUCTION INC. d/b/a NEWPORT SOLAR,**

By its attorneys,

/s/ Hillary J. Garland
Hillary J. Garland, Esq. # 7520
Tang & Maravelis, P.C.
200 Tollgate Road, Suite 203
Warwick, RI 02886
(401) 384-7265
hgarland@tangmaravelis.com

9

<u>Certificate of Service</u>

    I hereby certify that a true copy of the above document was served upon counsel of record via ECF on the 18th day of January 2024.

                                            **/s/ Hillary J. Garland**

                                            Hillary J. Garland