**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SABETTI CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.: 1:23-cv-00472-JJM-LDA |
| | ) | |
| SINGLEPOINT, INC., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
VACATE DEFAULT JUDGMENT & FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 1

    A.   SinglePoint ........................................................................................................ 1

    B.   The Non-Binding Contemplated Transaction ................................................. 1

    C.   Negotiations Collapse and Newport Solar Commences This Action, Bringing Misguided Claims Against SinglePoint ........................................................... 3

    D.   CT Corporation Fails to Notify SinglePoint of This Action ........................... 5

    E.   Newport Solar Obtains a Default Judgment and Seeks Execution Against SinglePoint's Bank Account ........................................................................... 6

    F.   SinglePoint Finally Discovers the Default Judgment & Promptly Retains Counsel ............................................................................................ 6

ARGUMENT ...................................................................................................................... 8

    I.    STANDARD OF REVIEW ............................................................................. 8

    II.   THE DEFAULT JUDGMENT SHOULD BE VACATED .............................. 9

    A.   The Failure of SinglePoint's Registered Agent to Deliver Process to SinglePoint at Its Proper Address Led Directly to the Entry of the Default Judgment, Constitutes Excusable Neglect and is Grounds to Vacate the Default Judgment ............................... 9

    B.   SinglePoint Anticipates Raising Multiple Meritorious Defenses and Should Be Permitted to Interpose an Answer Out of Time ................................................... 13

    III.  PENDING THE HEARING AND DETERMINATION OF THIS APPLICATION TO VACATE THE IMPROPERLY ENTERED DEFAULT JUDGMENT, THIS COURT SHOULD GRANT A STAY TEMPORARILY RESTRAINING AND ENJOINING PLAINTIFF FROM ENFORCING THE DEFAULT JUDGMENT, INCLUDING ENFORCEMENT AGAINST SINGLEPOINT'S BANK OF AMERICA ACCOUNTS ...................................................................................................... 14

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*American Metals Service Export Co. v. Ahrens Aircraft, Inc.*,
666 F.2d 718 (1st Cir. 1981)...................................................................................... 13

*Hospital del Maestro v. Nat'l Labor Relations Bd.*,
263 F.3d 173 (1st Cir. 2001)........................................................................................ 8

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*,
74 F.3d 349 (1st Cir. 1996).................................................................................. 8, 13

*Lowry v. McDonnell Douglas Corp.*,
211 F.3d 457 (8th Cir. 2000) ...................................................................................... 8

*Matter of G&J Fisheries, Inc.*,
570 F. Supp. 3d 8 (D. Mass. Nov. 5, 2021) ............................................................... 8

*Nansamba v. N. Shore Med. Ctr., Inc.*,
727 F.3d 33 (1st Cir. 2013)......................................................................................... 8

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*,
507 U.S. 380 (1993) ................................................................................................... 8

*Planned Parenthood League v. Bellotti*,
641 F.2d 1006 (1st Cir. 1981).................................................................................. 14

*Pro-Choice Network v. Schenck*,
67 F.3d 377 (2d Cir. 1995) ...................................................................................... 14

*Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co.*,
750 F.3d 1 (1st Cir. 2014).......................................................................................... 8

*United States v. $23,000 in U.S. Currency*,
356 F.3d 157 (1st Cir. 2004)...................................................................................... 8

*Winslow Marine, Inc. v. J. Supor & Son Trucking & Rigging, Inc.*,
2016 WL 7235670 (D. Me. Dec. 14, 2016)............................................................. 9, 10, 11

Statutes

N.R.S. § 598.092.......................................................................................................... 5

Rules

Fed. R. Civ. P. 60(b) ................................................................................................................. 1

Federal Rule of Civil Procedure 55(b)(1) .................................................................................. 7

Rule 55(b)(2) ............................................................................................................................. 7

Rule 55(c) .................................................................................................................................. 7

Rule 60(c) .................................................................................................................................. 7

## PRELIMINARY STATEMENT

Defendant SinglePoint, Inc. ("SinglePoint" or the "Company") brings this Motion to Vacate the Default Judgment and For a Temporary Restraining Order entered in favor of Plaintiff Sabetti Construction Inc. d/b/a Newport Solar ("Newport Solar") on February 8, 2024 [ECF 10] pursuant to FED. R. CIV. P. 60(b). SinglePoint hereby respectfully requests the Court grant this Motion in its entirety and further relief as the Court deems just and proper.

## FACTUAL BACKGROUND

### A.    SinglePoint

SinglePoint is a publicly traded company (CBOE[1]: SING) incorporated in Nevada and headquartered in Arizona, with its focus on sustainability and improvement in both business operations and offerings with subsidiaries that are the future of renewable energy, air purification and building safety. (*See* Declaration of SinglePoint Chairman and CEO Wil Ralston ("Ralston"), ¶ 4. ("Ralston Dec.")). The Company curates a portfolio of renewable energy-focused companies in solar, electric vehicle charging, and energy storage by acquiring established, market-leading companies that have significant potential to grow and scale. *Id*. at ¶ 5. SinglePoint is committed to a future of affordable, clean, and renewable energy. *Id* ¶ 6.

### B.   The Non-Binding Contemplated Transaction

On January 9, 2023, SinglePoint entered into a non-binding Letter of Intent (the "LOI") with Newport Solar. (*Id*. at ¶ 7; *see also* LOI, Exhibit A at p.1, attached to Ralston Dec.). The purpose of the LOI was for SinglePoint to express its interest in acquiring Newport Solar (the "Transaction"). (Ralston Dec., ¶ 8; Ex. A at p.1). As set forth in the LOI, the "obligation of the parties hereto to consummate the Transaction are subject to the negotiation and execution of the

---

[1]CBOE, http://www.cboe.com

Definitive Purchase Agreement." *Id*. The LOI was "intended solely as a basis for further discussion and [was] not intended to be and does not constitute a legally binding agreement." *Id*. Nonetheless, at its most basic level, the LOI contemplated a purchase price of $3,000,000 for 100% of Newport Solar's stock, with the Newport Solar executive team of Doug Sabetti, (Founder and CEO of Newport Solar) ("Sabetti"), Sue McNally, and Forrest Gibson each to receive consulting roles, and Newport Solar senior employee Mark Cordeiro ("Cordeiro") and other senior employees to receive employment roles, but only if the purchase were to be completed. (Ralston Dec., ¶ ; Ex. 9 A at p.2).

Negotiations and mutual due diligence continued into June 2023, with the parties executing two amendments to the LOI on May 10, 2023 (extending the closing date to June 12, 2023) and June 22, 2023 (the "Second LOI Amendment") (extending the closing date to July 14, 2023). (Ralston Dec., ¶ 10; *see also* Amendments to LOI, Exhibits B and C attached to Ralston Dec.). The LOI and its Amendments together provided for an exclusive negotiating period and, with certain exceptions—(i) an exclusivity provision, (ii) SinglePoint's issuance of $100,000 of stock to Newport Solar (which SinglePoint did in fact issue), and (iii) SinglePoint's payment of a $100,000 "Break Up Fee" in the event that the Transaction did not close—were *non-binding*. (Ralston Dec., ¶ 11; *see also* Ex. C). As part of these non-binding negotiations, the parties also entered into discussions to consummate a definitive asset purchase agreement (the "Purchase Agreement"), although the parties never executed the Purchase Agreement and thus it was also non-binding. (Ralston Dec., ¶ 12).

Due in part to a downturn in market conditions, SinglePoint was unable to obtain the financing necessary to close, notwithstanding its sincere desire to close and its diligent efforts to obtain financing on workable commercial terms. (*Id*. at ¶ 13). However, even had SinglePoint been

able to secure the necessary financing, the Transaction *still* would not have closed; in reality, the substantial and proximate cause of SinglePoint's inability to close was Newport Solar's unwillingness to ensure commercially reasonable terms with respect to one of the material aspects of the contemplated Transaction. (*Id.* at 14). One of the conditions to SinglePoint's obligation to close the transaction was LOI Section 7.02, which was "enter[ing] into an acceptable contract of employment with Mark Cordeiro." (Ralston Dec., ¶ 15; *see also* Ex. A). In fact, Brett Joshpe ("Joshpe"), counsel for SinglePoint, sent a draft of the Cordeiro Employment Agreement (the "Draft Cordeiro Agreement") to Eric Sigman ("Sigman"), counsel for Newport Solar, on June 6, 2023. (Ralston Dec., ¶ 16; *see also* Draft Cordeiro Agreement, attached to the Ralston Dec. as Exhibit D). However, inexplicably, *more than a month later*, two days prior to the targeted closing set forth in the Second LOI Amendment, Sigman sent back material changes to the draft Employment Agreement (the "Materially Changed Cordeiro Agreement") that Mr. Cordeiro's attorney was purportedly requesting at the last minute. (Ralston Dec., ¶ 17, *see also* Materially Changed Cordeiro Agreement, attached to the Ralston Dec. as Exhibit E). Irrespective of anything SinglePoint did or did not do, Newport Solar's inexplicable inattention to the Cordeiro matter caused a commercially unreasonable delay to the closing and ultimately made the closing impossible. (Ralston Dec., ¶ 18).

### C. Negotiations Collapse and Newport Solar Commences This Action, Bringing Misguided Claims Against SinglePoint

Notwithstanding Newport Solar's clear obstruction of the closing, in early August 2023, the parties ceased negotiations without anticipated litigation—or so SinglePoint believed in good faith. (*Id.* at ¶ 19). But Newport Solar was unwilling to accept that the Transaction could not close due to its own failure to compromise on the Draft Cordeiro Agreement, and, on August 25, through its then-counsel Ruberto, Israel & Weiner (RIW), sent an inflammatory demand letter to

SinglePoint (bypassing counsel, even though SinglePoint was represented), to which Joshpe responded the next day. (*Id*. at ¶ 21–22; *see also* Newport Solar Demand Letter, Exhibit F attached to Ralston Dec., Joshpe Response Letter, Exhibit G attached to Ralston Dec.). Joshpe made it clear that SinglePoint intended to vigorously defend itself against any claims. (Ex. F). The parties did not engage in any further communications about the Transaction. (*Id*. at ¶ 23). But, instead of engaging in further settlement talks or otherwise trying to salvage the Transaction, Newport Solar chose a different route—litigation.

On November 10, 2023, completely unbeknownst to Ralston and the rest of the SinglePoint executive team, Newport Solar launched a bad faith ambush and filed this action. [ECF 1 (Complaint)]. Newport Solar's Complaint included grossly misguided claims for breach of contract, misrepresentation, negligence, and violation of the Nevada Deceptive Trade Practices Act supposedly arising from SinglePoint's "misrepresentations and failure to close on the sale of Plaintiff's business assets." (Complaint, Introduction). Newport Solar's allegations fall into several general categories.

First, Newport Solar alleges that SinglePoint breached its agreement by "failing to . . . close the Transaction on the Amended Closing Date." (*Id*. at ¶ 46). In fact, pursuant to the LOI and its Amendments, SinglePoint was not obligated to close the Transaction. Section V of the Second LOI Amendment (Ex. C), "REMEDY FOR FAILURE TO CLOSE" states, "Unless caused by Newport's failure or refusal to close the Transaction by the Closing Date, in the event that SinglePoint does not close the Transaction by the Closing Date, SinglePoint shall pay to Newport $100,000.00 (the "Break Up Fee") within thirty (30) business days, **which shall be Newport's sole and exclusive remedy for any failure to closing the Transaction**." (Emphasis added).

4

Second, Newport Solar alleges that, under Nevada law, SinglePoint violated the implied covenant of good faith and fair dealing by "failing . . . to close the Transaction on the Amended Closing Date . . . pay the Break Up Fee . . . and issue $100,000 worth of stock to Sabetti . . . and deliberately engaging in actions purposefully aimed at frustrating with Sabetti's ability to benefit from the contract." (Complaint, ¶ 53). In fact, as demonstrated *supra*, the LOI and its Amendments were non-binding, the Break Up Fee was owed to Newport Solar only if the closing was not "caused by Newport's *failure* or refusal to close the Transaction by the Closing Date," (Ex. D), Sabetti himself was not personally a party to the agreements (Newport Solar was the counterparty to SinglePoint, not Sabetti), (Exs. A, B, C) and SinglePoint in fact did deliver the required shares (Ralston Dec., ¶ 25; *see also* Proof of Delivery of Shares, attached hereto as Exhibit H). Yet, Newport Solar bizarrely and incoherently alleges that SinglePoint "is guilty of oppression, fraud and/or malice," apparently also oblivious to the fact that "guilty" is a wholly criminal term and has no meaning in a civil action. (Complaint, ¶ 55).

Third, Newport Solar alleges "misrepresentation" in Count Three, negligence in Count Four based on the same facts, and violation of the Nevada Deceptive Trade Practices Act, N.R.S. § 598.092 in Count Five, all based on the same operative set of facts as Counts One and Two, *supra*. (Complaint, ¶¶ 50–76).

### D. CT Corporation Fails to Notify SinglePoint of This Action

On November 30, 2023, SinglePoint's registered agent, CT Corporation ("CT"), received Newport Solar's Complaint and other commencement documents. (Ralston Dec., ¶ 36). At the time, CT had in its system the following current address for SinglePoint: 3104 E Camelback Rd #2137, Phoenix, AZ 85016 (the "Correct SinglePoint Address"). (*Id*. ¶ at 38). However, CT mistakenly sent the Complaint to the following address: 2999 N 44th Ste 530, Phoenix, AZ 85018 (the "Incorrect SinglePoint Address"). (*Id*. at ¶ 39.) At this time, the Incorrect SinglePoint address

was multiple years old and CT's own computer system indicated that it was the wrong address. Nonetheless, without any valid excuse or justification, CT mailed process to the Incorrect SinglePoint address. (*Id.* at ¶ 40). The documents were never forwarded to SinglePoint by CT or by the United States Post Office. (*Id.*; Ralston Dec., ¶ 32). As a proximate result of CT's error, SinglePoint did not receive process in a timely manner. (*Id.*).

### E.  Newport Solar Obtains a Default Judgment and Seeks Execution Against SinglePoint's Bank Account

On December 23, 2023, Newport Solar filed its Request for Default with this Court. On January 18, 2024, Newport Solar filed a motion for default judgment and assessment of damages. [ECF 9]. On February 8, this Court ordered a judgment by default for $238,678.26, consisting of legal fees of $20,488, prejudgment interest in the amount of $18,190.26, and the principal amount of $200,000. [ECF 10]. On May 8, 2024, Newport Solar filed a Writ of Execution directing the United States Marshal for the District of Rhode Island to enforce the judgment in the amount of $243,601.00 (including post-judgment interest). [ECF 11]. On May 23, the Clerk of this Court signed the Writ of Execution. [ECF 12].

On May 31, Bank of America ("BOA"), where SinglePoint maintains its corporate bank accounts, provided its Answer to the Writ of Execution to this Court in a letter asking for it to be filed. [ECF 13]. BOA copied Ruberto, Israel & Weiner on this correspondence. [*Id.*]. On June 4, this Court received the Writ of Execution. [*Id.*]. According to BOA's Answer (by Albert Alvarez, BOA Trustee), BOA holds $213,326.33 in the name of SinglePoint. [*Id.*]. As of May 31, BOA attached these funds, broken down between one account holding $108,064.42 and a second account holding $105,261.91. BOA moved the funds from SinglePoint's account into an unknown legal account.

### F.  SinglePoint Finally Discovers the Default Judgment & Promptly Retains Counsel

Late in the afternoon of May 31, 2024 (a Friday), following BOA's attachment of the funds, Ralston received a distressing online alert from BOA that there were no funds available in SinglePoint's account. (Ralston Dec., ¶ 29; *see also* Screenshot of SinglePoint's Account, attached to Ralston Dec. as Exhibit H). He immediately logged on to the BOA online platform and saw an alert that SinglePoint's funds were unavailable for legal reasons. (*Id.*). Unfortunately, it was too late in the day for Ralston to act in any meaningful way to address this stunning development. However, Ralston, now aware that there was likely some sort of legal action against SinglePoint, searched for and located this action on PACER on June 4, 2024. (*Id.* at at ¶ 31).

On the morning of Monday, June 3, Ralston called Brett Powell, the BOA client relations specialist assigned to SinglePoint, to seek additional clarity. (*Id.* at ¶ 30). Powell informed Ralston that the funds had been attached due to a default judgment and writ of execution in this action. (*Id.*). On June 6, Ralston sent an e-mail to attorney Powell to communicate to BoA and others that SinglePoint was unaware of the lawsuit, that Newport Solar's judgment lacked merit, and that SinglePoint immediately began taking steps to challenge the default judgment. (*Id.* at ¶ 34; *see also* E-mail Correspondence from W. Ralston to B. Powell, attached to Ralston Dec. as **Exhibit J**). On June 11, after a thorough internal discussion and search for suitable counsel, SinglePoint contacted undersigned counsel Edward Andrew Paltzik of Bochner PLLC about representation in this action. (*Id.*). On June 10, after a thorough internal discussion and search for suitable counsel, SinglePoint contacted undersigned counsel Edward Andrew Paltzik of Bochner PLLC about representation in this action. (*Id.*). The next day, June 11, SinglePoint promptly retained Bochner PLLC. (*Id.*). On June 13, SinglePoint retained McIntyre Tate LLP to serve as co-counsel in this action. (*Id.*). The next day, June 14, Stephen M. Prignano of McIntyre Tate LLP appeared in this action for SinglePoint [ECF 15] and promptly filed motions to appear pro hac vice on behalf of

Edward Andrew Paltzik and Geneva Hernandez. [ECF 16, 17]. On June 18, the Court granted those motions to appear pro hac vice. [ECF 18].

## ARGUMENT

### I.    STANDARD OF REVIEW

Unless the clerk has entered a default judgment for a sum certain pursuant to Federal Rule of Civil Procedure 55(b)(1), a "party must apply to the court for a default judgment" pursuant to Rule 55(b)(2). In turn, Rule 55(c) provides that "[t]he court . . . may set aside a final default judgment under Rule 60(b)." Pursuant to Rule 60(c), motions under Rule 60(b)(1) must be made "within a reasonable time" which may be "no more than a year after the entry of the judgment or order . . . ." Rule 60(b)(1) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." This standard allows a court "where appropriate, to accept late filings caused by the inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993); *see also United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004). Moreover, "[c]ourts prefer to resolve disputes on the merits." *Matter of G&J Fisheries, Inc*., 570 F. Supp. 3d 8, 10 (D. Mass. Nov. 5, 2021) (citing *Key Bank of Maine v. Tablecloth Textile Co. Corp*., 74 F.3d 349, 356 (1st Cir. 1996)).

As held by the Supreme Court in *Pioneer*, excusable neglect is a broad category that includes "inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control." *Nansamba v. N. Shore Med. Ctr., Inc*., 727 F.3d 33, 38 (1st Cir. 2013) (quoting *Pioneer Inv. Servs. Co*., 507 U.S. at 388). Courts determine whether excusable neglect has occurred using an equitable analysis that examines the totality of the circumstances. *Nansamba*, 727 F.3d at 39. Courts consider (1) the explanation for the delay, (2) whether the non-movant will

be prejudiced by the delay, and (3) whether the party requesting relief acted in good faith. *Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co*., 750 F.3d 1, 4 (1st Cir. 2014). "[T]he reason-for-delay factor will always be critical to the inquiry . . . ." *Hospital del Maestro v. Nat'l Labor Relations Bd*., 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp*., 211 F.3d 457, 463 (8th Cir. 2000)). Indeed, the "pivotal factor is the reason for the particular oversight." *Rivera-Velazquez*, 750 F.3d at 4 (quoting *Nansamba*, 727 F.3d at 39).

## II.    THE DEFAULT JUDGMENT SHOULD BE VACATED

### A. The Failure of SinglePoint's Registered Agent to Deliver Process to SinglePoint at Its Proper Address Led Directly to the Entry of the Default Judgment, Constitutes Excusable Neglect and is Grounds to Vacate the Default Judgment

#### i)  *Winslow Marine*

The circumstances in the case at bar involving CT's failure to deliver process to SinglePoint are unusual, but not unprecedented in this Circuit. *See, e.g., Winslow Marine, Inc. v. J. Supor & Son Trucking & Rigging, Inc*., No. 2:15-cv-312-NT, 2016 WL 7235670 (D. Me. Dec. 14, 2016). In *Winslow Marine*—a matter involving a remarkably similar registered agent failure—third-party defendant Iberdrola Energy Projects, Inc. ("IEP") moved pursuant to Rule 60(b)(1) to vacate the default judgment entered against it and was opposed by defendant Supor & Son Trucking & Rigging Inc. ("Supor").

The underlying dispute involved a contract with IEP for Supor to transport concrete pilings. *Id*. at *1. Supor contacted with plaintiff Winslow Marine for tugboat services to transport the pilings. Supor completed the work and IEP paid the full amount of their lump-sum contract. *Id*. However, Supor then sent IEP a change order for $216,261.87, claiming that it was entitled to more money due to greater widths of the pilings, which IEP rejected. *Id*.

On October 22, 2015, Supor filed a third-party complaint against IEP, asserting a claim for the same amount of $216,261.87. *Id*. On October 27, 2015, the Kennebec County Sheriff served the third-party complaint on CT—the very same registered agent at issue in the case at bar—which was IEP's registered agent for service of process. *Id*. On October 30, 2015, CT delivered the third-party complaint by Fed-Ex to an address in Rochester, New York that CT had listed for IEP. *Id*. However, several months earlier, IEP had moved to Salem, Massachusetts, and as of October 2015 had no employees remaining at the Rochester office. *Id*. Although a security guard not employed by IEP received the process, IEP itself never received the process. *Id*.

With no responsive pleading filed by IEP, Supor moved for default judgment against IEP on December 4, 2015. *Id*. at *2. The Clerk entered a default on December 7, 2015. After a judicial settlement conference, Supor consented to entry of judgment against it and in favor of plaintiff in the amount of $470,000. *Id*. On April 20, 2016, Supor and Winslow Marine filed a joint motion for entry of final judgment against IEP. *Id*. That day, the Court entered final judgment against IEP for $216,261.87 plus interests and costs, the sum requested in the third-party complaint. *Id*. On July 12, 2016, IEP received a letter from Supor demanding satisfaction of the judgment. *Id*. On September 1, 2016, IEP filed its motion to vacate the default judgment. *Id*.

In its motion, IEP acknowledged that service was properly made on its registered agent, CT. *Id*. Instead, IEP argued that it did not receive the third-party complaint until after it learned of the default judgment, and conceded that the "mistake in the delivery of service [was] caused in part by its own failure to update its address with its registered agent." *Id*. Accordingly, IEP asserted "mistake" and "excusable neglect" under Rule 60(b). *Id*. The Court found in favor of IEP, concluding on the most important factor, reason for the delay:

> Although IEP should have notified CT Corp. of its change of address, that inadvertent oversight was compounded by circumstances beyond IEP's control. Had the security guard

declined the FedEx package that he was not authorized to receive, IEP would likely have learned of the lawsuit in a timely manner. Under these circumstances, I find that the reason for the delay was in part beyond IEP's control.

*Id*.

On the issue of prejudice, the Court found that even Supor's obligation to satisfy the judgment in favor of Winslow Marine, potentially without *any* contribution from IEP, was not a basis to deny IEP's motion, particularly since Supor had failed to notify IEP of Winslow Marine's claim. *Id*. at *3. On the issue of timing, the motion was timely since it was filed eight months after default judgment was entered and six weeks after IEP first learned of the judgment. *Id*. On the issue of good faith, although IEP failed to inform CT of its new address, which was clearly an error, "there [did] not appear to be any lack of good faith on IEP's part." *Id*. On the other hand, SUPOR had not acted in good faith. *Id*.

Before the lawsuit was filed, Supor agreed to send IEP evidence to support the change order if it was going to press the matter further. IEP understood that the matter was closed unless it heard from Supor. Because Supor never sent IEP confirming documentation of the change order as it had promised, IEP had no reason to believe that a conflict existed or that a lawsuit would be filed. Once judgment was entered, however, Supor sent the notice of default judgment to IEP in Salem, Massachusetts. These actions suggest Supor knew how to notify IEP when it wanted to do so, but it chose not to advise IEP that it was pursuing the change order.

*Id*.

Accordingly, "[c]onsidering the Pioneer factors, weighing the reason for delay most heavily, and recognizing the desirability of deciding disputes on their merits" the Court granted IEP's motion to vacate the default judgment. *Id*.

### 2) *The Case at Bar*

SinglePoint's circumstances compare favorably to *Winslow Marine*, in numerous respects. First, as to the reason for the delay, SinglePoint was not to blame for the default—CT simply delivered process to the wrong address for SinglePoint, even though SinglePoint had provided the

correct address to CT. In *Winslow Marine*, IEP was at fault for not providing CT with an updated address and the court still found excusable neglect.

Second, as to the issue of prejudice, any inconvenience and expense to Newport Solar that will result from being put on equal footing with SinglePoint—and defending the action on the merits—is certainly outweighed by the prejudice that will result to SinglePoint from an unfair default judgment. This is especially so where Newport Solar failed to notify SinglePoint that an action had been filed. There were open lines of communication between the parties and Newport Solar knew from the parties' course of correspondence that SinglePoint intended to vigorously defend itself against any action as previously communicated to Newport Solar. Certainly, any prejudice here is far less significant than the prejudice that could have resulted to Supor by being made liable to Winslow Marine for the entire stipulated judgment amount.

Third, on the issue of timing, this motion is timely filed at just over four months since the default judgment was entered and under four weeks after SinglePoint first learned of the judgment. Both of these time frames are far less than in Winslow Marine (IEP's motion was filed eight months after default judgment was entered, and six weeks after IEP first learned of the judgment).

Fourth, on the issue of good faith, SinglePoint clearly acted in good faith to address this default as soon as it became aware of the default. Newport Solar, on the other hand, has plainly acted in bad faith. Critically, during the period of November 10, 2023 (commencement of the action) until February 8, 2024 (rendering of default judgment), not once did Newport Solar or its attorneys inform SinglePoint of this action even though it was readily apparent that SinglePoint intended to vigorously defend itself against Newport Solar's claims set forth in its demand letter. *Id*. at ¶ 21.).  Newport Solar had every reason to believe from the course of dealings between the parties—during which SinglePoint was always highly communicative and responsive—that

SinglePoint would not have defaulted had they received proper notice of the action. Newport Solar's concealment of this action was all the more disturbing in view of the fact that providing such notice would have been a simple act of good faith and a commercially fair practice, and could have been accomplished through a single email. Much like Supor knew how to notify IEP when it wanted to do so in *Winslow Marine*, but chose not to when convenient, the same is true in the case at bar—Newport Solar knew how to contact SinglePoint.

### B. SinglePoint Anticipates Raising Multiple Meritorious Defenses and Should Be Permitted to Interpose an Answer Out of Time

Another factor to be considered on a motion to vacate a default judgment is the existence of meritorious defenses. *American Metals Service Export Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 720 (1st Cir. 1981); *see also Key Bank of Maine v. Tablecloth Textile Corp.*, 74 F.3d 349, 355 (1st Cir. 1996) ("we hold that the lack of notice, coupled with Appellant's showing of the existence of a potentially meritorious defense . . . requires that the default judgment be set aside");

Here, SinglePoint has multiple meritorious defenses. At bottom, Newport Solar's suit revolves around the dubious notion that SinglePoint was somehow obligated to close the Transaction. Indeed, Newport Solar alleged that SinglePoint breached its agreement by "failing to . . . close the Transaction on the Amended Closing Date." (Complaint, ¶ 46). But SinglePoint was simply not obligated to close the Transaction, as set forth in Section V of the Second LOI Amendment (Ex. C), set forth *supra* ("REMEDY FOR FAILURE TO CLOSE").

Similarly, Newport Solar's claim of breach of implied covenant of good faith and fair dealing also revolves around the same essential claim: that SinglePoint "fail[ed] . . . to close the Transaction on the Amended Closing Date . . . pay the Break Up Fee . . . and issue $100,000 worth of stock to Sabetti . . . and deliberately engaging in actions purposefully aimed at frustrating with Sabetti's ability to benefit from the contract." (Complaint, ¶ 53). Not only was the LOI non-

binding, the Break Up Fee was only owed to Newport Solar if the closing was not "caused by Newport's *failure* or refusal to close the Transaction by the Closing Date," (Ex. D). And, Sabetti himself was not personally a party to the agreements (Newport Solar was the counterparty to SinglePoint, not Sabetti), (Exs. A, B, C). Further, SinglePoint in fact did deliver the required shares (Ralston Dec., ¶ 25; *see also* Ex. H). Contrary to Newport Solar's self-serving narrative, it made a substantial contribution to the collapse of the deal—Sigman sat on the Draft Cordeiro Agreement for over a month, then sent back the Materially Changed Cordeiro Agreement to Joshpe right before the closing date. (*See* Exs. D, E).

Given these plain facts, Newport Solar's allegations that SinglePoint "is guilty of oppression, fraud and/or malice," are far off the mark. (Complaint, ¶ 55). For the same reasons, SinglePoint also has a meritorious defense to Counts Three through Five.

### III. PENDING THE HEARING AND DETERMINATION OF THIS APPLICATION TO VACATE THE IMPROPERLY ENTERED DEFAULT JUDGMENT, THIS COURT SHOULD GRANT A STAY TEMPORARILY RESTRAINING AND ENJOINING PLAINTIFF FROM ENFORCING THE DEFAULT JUDGMENT, INCLUDING ENFORCEMENT AGAINST SINGLEPOINT'S BANK OF AMERICA ACCOUNTS

A temporary restraining order "is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available." *Pro-Choice Network v. Schenck*, 67 F.3d 377, 389–99 (2d Cir. 1995). The following four factors govern a court's TRO analysis: (1) the likelihood that the movant will succeed on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of the relevant equities; and (4) the public interest. *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981).

Here, a TRO is appropriate because, as set forth *supra*, SinglePoint is likely to succeed on the merits. Moreover, SinglePoint will suffer irreparable harm without a temporary restraining order because, in the event that Newport Solar is allowed to execute on the judgment while the

motion to vacate the default judgment is pending, SinglePoint will be left with emptied corporate bank accounts even if it succeeds on the motion. This would be devastating to SinglePoint. (Ralston Dec. ¶ 43). Moreover, this irreparable harm is imminent—indeed, on May 31, BOA attached the $213,326.33 in the name of SinglePoint. [ECF 13]. In an effort to put BOA on notice of this impending motion to vacate the default judgment, SinglePoint's counsel sent two letters to BOA on June 20, 2024 (*Id.* at ¶ 41; Letters to Bank of America, attached to the Ralston Dec. as **Exhibit K**). However, alarmingly, BOA has not responded to SinglePoint's letters. The balance of the equities also favors SinglePoint, as the harm that SinglePoint would suffer absent a restraining order (emptied corporate bank accounts prior to having a chance to defend on the merits) far outweighs any harm to Newport Solar (being unable to enforce a dubious judgment).

Lastly, the public interest clearly favors SinglePoint, as the public interest is not well-served by allowing enforcement of a judgment where a defendant has appeared before the Court with a compelling showing of excusable neglect together with meritorious defenses. Moreover, the public interest also favors SinglePoint because Newport Solar, in obtaining the Writ of Execution [ECF 12] did not comply with the Local Rules of this Court, in particular Loc. Civ. R. 69(b) (Writs of Execution), which requires that a request for a writ of execution "be accompanied by an affidavit that states: (1) the amount due on the judgment and an explanation of how that amount has been calculated; (2) that a demand for payment has been made and refused; and (3) what efforts have been made to recover the judgment."

## CONCLUSION

For the foregoing reasons, the Default Judgment entered on February 8, 2024 should be vacated pursuant to FED. R. CIV. P. 60(b)(1), and a temporary restraining order granted pending determination of the motion.

Date: June 28, 2024                          Respectfully Submitted,

                                    By:   /s/ Edward Andrew Paltzik

                                          Edward Andrew Paltzik, Esq.
                                          Geneva Hernandez, Esq.
                                          **BOCHNER PLLC**
                                          1040 Avenue of the Americas, 15th Fl.
                                          New York, New York 10018
                                          (516) 526-0341
                                          edward@bochner.law
                                          ghernandez@bochner.law



                                          /s/ *Stephen M. Prignano*
                                          Stephen M. Prignano, Esq. (#3649)
                                          **MCINTYRE TATE LLP**
                                          50 Park Row West, Suite 109
                                          Providence, Rhode Island 02903
                                          (401) 351-7700
                                          (401) 331-6095 (Fax)
                                          SPrignano@McIntyreTate.com

                                          *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2024, I cause a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT & FOR A TEMPORARY RESTRAINING ORDER to be served on all counsel of record via the Court's CM/ECF system.


Dated: June 28, 2024                                    /s/ Edward Andrew Paltzik
                                                        Edward Andrew Paltzik, Esq.