# EXHIBIT A



2999 N 44th St, Suite 530
Phoenix, AZ 85018

**CONFIDENTIAL**

January 9, 2023

Mr. Doug Sabetti
Founder & Chief Executive Officer
Sabetti Construction Inc.
300 Old Baptist Road #2
North Kingstown, RI 02852

Subject: Non-Binding Letter of Intent

Dear Doug,

      We are pleased to present to you and your firm BayState Business Brokers (the "Advisor"), acting on behalf of Sabetti Construction Inc, D/B/A Newport Solar (the "Company" or the "Seller"), with this non-binding Letter of Intent ("LOI") for consideration by you and the Company's owners. SinglePoint Inc., ("SinglePoint" or the "Buyer"), is submitting this letter of intent to express its interest in consummating an acquisition of the Company as described in more detail herein (the "Transaction").

      The obligation of the parties hereto to consummate the Transaction are subject to the negotiation and execution of the Definitive Purchase Agreement. Accordingly, this letter is intended solely as a basis for further discussion and is not intended to be and does not constitute a legally binding agreement. This letter shall not confer on any person or entity, other than the parties hereto, any rights or remedies.

I.    **PURCHASE PRICE & TRANSACTION STRUCTURE.** The purchase price for one hundred percent (100%) of the outstanding capital stock, on a cash-free and debt-free basis, of three million dollars ($3,000,000) (the "Purchase Price"). At closing (the "Closing"), subject to the satisfaction of all conditions precedent contained in the Definitive Purchase Agreement, the Buyer will purchase the capital stock from the Seller, including warrants, options, and convertible securities of the Seller (as described in more detail below in "Form of Consideration" section), free and clear of any liens, charges restrictions or encumbrances (collectively, the "Shares") or all the assets of the Company (the "Assets") with the final determination to be agreed to upon the Buyer and Seller. The Buyer will pay, at Closing, two million five hundred thousand dollars ($2,500,000) paid in cash at Closing and five hundred thousand dollars ($500,000) subject to the terms outlined in the "Escrow/ Holdback" section below.

      The Buyer may assign some or all of its rights hereunder prior to the Closing to one or more of its subsidiaries. Pursuant to further due diligence the Buyer may elect to treat the acquisition as an asset purchase or may elect that the Transaction be treated as an "Asset Sale" under Section 338(h)(10), or substantial equivalent, under the IRS tax code.

II.    **RESTRICTED STOCK UNITS.** The RSU Plan will be mutually developed, agreed upon, and implemented with input from the Buyer and Seller based on identified and selected employees': (i) historical and total compensation; (ii) duration of employment; (iii) critical role in contributing to the Company's long-term goals; and (iv) desired duration of retention with a minimum vesting schedule of three years.

III.    **NET WORKING CAPITAL.** As part of the working capital needs, the Seller will convey a mutually agreeable net working capital target ("Base Amount") with a formula to be defined during diligence (i.e., current assets, excluding cash, minus current liabilities) of the Seller ("Net Working Capital"). To the extent that there is a difference between the Base Amount and the Net Working Capital at Closing, the purchase price will be increased or decreased dollar-for-dollar over or below the Base Amount.

**CONFIDENTIAL**
Mr. Doug Sabetti
Sabetti Construction Inc.
January 9, 2023

IV. **ESCROW / HOLDBACK.** The Buyer will pay five hundred thousand dollars ($500,000) no later than six (6) months from the Closing of the Transaction subject to any post-closing adjustments resulting from the completion of the audited financial statement plus or minus any adjustments related to Net Working Capital. The Buyer will purchase Representation and Warranty Insurance at its sole cost and expense pursuant to terms to be agreed upon in Definitive Purchase Agreement. For the avoidance of doubt, this excludes compensation from management transition or consulting contracts and incentive shares, such as Restricted Stock Units ("RSUs"), issued to employees of Newport Solar.

V. **EMPLOYMENT MATTERS.** At Closing, key owners and consultants will enter into a consulting agreement to be mutually agreed upon by each party. Doug Sabetti, Sue McNally, and Forrest Gibson will each enter into a consulting agreement, under mutually agreeable terms, with the Buyer for one year with a sunset provision to be agreed upon.

VI. **FINANCING.** The Transaction will require a financing through a registered public offering that is expected to be completed prior to Closing of the Transaction. The registered public offering will be subject to the filing of a Form S-1 or S-3 and approval by the Securities & Exchange Commission and will be executed as an underwritten offering by a designated broker-dealer. SinglePoint anticipates that the offering amount will be no less than US$4.0 million with the exact amount determined by the Buyer's acquisition pipeline, underwriter commitments and market conditions at the time of the issuance. At the sole discretion of the Buyer, the Buyer may choose to utilize a bridge financing in order to complete the Transaction.

VII. **PURCHASING ENTITY.** SinglePoint Inc., (OTC:SING), a Nevada corporation, is a US publicly listed company founded over fifteen years ago, focused on providing renewable energy solutions and energy-efficient applications to drive better health and living. The company's core subsidiaries include solar and air purification and has built a portfolio through synergistic acquisitions, products, and partnerships to provide a diversified holding base. The Company's primary focus today is on solar and renewable energy where it is committed to building a foundation for future expansion opportunities. The company's acquisition and portfolio strategy objective is to create long-term value for shareholders by helping its partner companies increase market penetration, grow revenue and improve cash flow.

For purpose of the Transaction, the Buyer intends to utilize the Seller's existing business, management, and operations as the accelerant for rapid national growth. The Purchasing Entity will be SinglePoint or an entity established by SinglePoint.

VIII. **BOARD AND/OR INVESTMENT COMMITTEE REVIEW.** The Transaction decision is subject to approval by SinglePoint's Chairman, Chief Executive Officer, and Chief Financial Officer and is not subject to full board approval or shareholder approval.

IX. **REQUIRED APPROVALS AND CONDITIONS.** This offer is expressly contingent upon completion of the following:

   a. Completion of due diligence by the Buyer and its advisors within sixty (60) days of signing of a letter of intent, the results of which are satisfactory to the Buyer in its sole and absolute discretion. Diligence will include verification to the satisfaction of the Buyer that existing contracts, leases, and licenses, if any, are assignable, assumable, transferable, or renegotiable on satisfactory terms.

   b. Completion of Quality of Earnings report within the sixty (60) day diligence period and formal written notice from the Buyer of its intent to move forward with the Transaction under the terms outlined herein.

   c. The Buyer's determination to elect for the Transaction be treated as an "Asset Sale" under Section 338(h)(10), or substantial equivalent, under the IRS tax code.

**CONFIDENTIAL**
Mr. Doug Sabetti
Sabetti Construction Inc.
January 9, 2023

    d.    The delivery of a draft Definitive Purchase Agreement within 90 days of the signing of a letter of intent, based upon the framework described in this Letter of Intent with comprehensive representations, warranties, indemnifications and other terms appropriate to the transaction, with execution of a final Definitive Purchase Agreement within 120 days of signing of letter of intent.

    e.    The completion of mutually acceptable employment agreements or consulting agreements for senior management team.

    f.    Obtaining of financing acceptable to Buyer within ninety (90) days of execution of this Letter of Intent and closing within one hundred twenty (120) days after execution of this Letter of Intent.

X.    **COVENANT NOT TO COMPETE OR SOLICIT.** Seller will be bound by a Covenant not to compete and covenant not to solicit in which will be included in the Purchase Agreement and in any employment or consulting agreement for a period of five (5) years following the later of the closing of the transaction or the termination of any employment or consulting agreement for cause.

XI.    **OPERATIONS PENDING CLOSE.** Until the Closing, the Seller shall continue to operate the business in a reasonable manner consistent with past practices, shall not engage in any transaction outside of the ordinary course of business without the Buyer's consent, which consent shall not be unreasonably withheld, conditioned, or delayed, and shall have achieved mutually acceptable financial performance. All equipment used by the Seller shall be conveyed at time of closing.

XII.    **CLOSING.** During due diligence, the Buyer will prepare the Definitive Purchase Agreement and any related agreements, and the parties shall use their best efforts to execute the Purchase Agreement and any related agreements as promptly as possible, but in no event later than May 10, 2023 unless mutually agreed upon by both Parties.

XIII.    **EXPENSES OF THE PARTIES.** Each party will be responsible for and pay its own legal and other costs in connection with this Transaction.

XIV.    **EXCLUSIVE NEGOTIATING PERIOD.** For a period of one hundred twenty *(120)* days following the execution of this Letter of Intent, the Seller shall not negotiate with or provide any information to any other parties for the purposes of investing in the Company, raising capital or related to the purchase and sale of any interests in the Company or any assets of the Company. In the event that any third parties contact the Company or Seller related to any of the foregoing, the Seller will promptly notify SinglePoint and provide details of such communications. Upon signing of the Letter of Intent the Buyer will issue the Seller fifty thousand dollars ($50,000) of its shares based upon the sixty (60) days volume weighted average price of SING prior to execution of the LOI In the event the Seller chooses not to consummate the Transaction, the Buyer will have the right to claw back seventy-five percent of the shares that have been issued for no additional consideration.

XV.    **CONFIDENTIAL INFORMATION.** The parties agree that neither will use or disclose any of the information gathered pursuant to the non-disclosure agreement executed on November 21, 2022 (the "NDA"), except for the purposes of pursuing the transaction contemplated by this Letter of Intent. As stated in the NDA, without the express written consent of all the parties hereto, each of the parties hereto agree to maintain in confidence and not disclose to any other person the existence of this Letter of Intent, the terms of the proposed transaction or the information delivered in connection with the proposed due diligence, other than disclosures required to obtain the approvals for the transaction contemplated hereby, disclosures to those professionals, advisors and potential financing sources and their attorneys who have a need to know, any other disclosure required by applicable law or to inform third parties of the existence of the Letter of Intent and its exclusivity provisions. In the event that a party hereto is subject to a request (by oral questions, interrogatories, request for information or documents, subpoena or similar process) to disclose any

<u>**CONFIDENTIAL**</u>
Mr. Doug Sabetti
Sabetti Construction Inc.
January 9, 2023

      information supplied to it in connection with this transaction to anyone other than professionals, advisors and potential financing sources and their attorneys, such party agrees to provide the other parties prompt notice of such request so that an appropriate protective order may be sought and/or such other parties may waive the first party's compliance with the terms of this paragraph.

XVI.    <u>**GOVERNING LAW.**</u> This Letter of Intent will be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to any conflict of law provision and to the exclusion of the laws of every other jurisdiction.

This letter is non-binding with the exception of Paragraphs XIII *(Expenses of the Parties)* and XIV Exclusive (*Negotiating Period*) and XV *(Confidential Information)* and XVI *("Governing Law"),* which are binding and governed by the laws of Nevada.

If you agree to these terms, please promptly sign the original of this letter as indicated below and return it by January 13, 2023, after which time it shall be null and void.

*[signature page to follow]*

Page **4** of **5**

<u>**Confidential**</u>
Mr. Doug Sabetti
Sabetti Construction Inc.
January 9, 2023

**SINGLEPOINT INC.:**

By: ***Wil Ralston***
William Ralston
Chief Executive Officer
Date: January 9, 2023

**AGREED AND ACCEPTED BY:**

By: _____
Doug Sabetti
Founder & Chief Executive Officer
Date: January  9 , 2023