# EXHIBIT D

**Employment Agreement**

This Employment Agreement (the "**Agreement**") is made and entered as of [DATE]June ___, 2023 (the "**Execution Date**") and effective immediately upon the closing of the Acquisition (as defined below) (the "**Effective Date**") by and between Mark Cordeiro (the "**Employee**") and [SinglePoint ], a [_____] (the "**Company**").

WHEREAS, the Employee was previously employed as a ─────────Project Manager by Sabetti Construction Inc. ("**Sabetti**");

WHEREAS, the Employee was the holder of the master electrician license of record with Sabetti;

WHEREAS, the Company has acquired the assets of Sabetti (the "**Acquisition**") pursuant to an Asset Purchase Agreement dated [_____,June____, 2023] and wishes to continue operating in the solar panel, battery, electrical charger sales, installation, and servicing business (the "**Business**");

WHEREAS, as part of the Acquisition, the Company wishes to employ the Employee on the terms and conditions set forth herein; and

WHEREAS, the Employee desires to be employed by the Company on the terms and conditions herein.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, the parties agree as follows:

1. <u>Term</u>. Subject to Section 5 4 of this Agreement, the Employee's term of employment hereunder shall be from the period beginning on the Effective Date and ending three years from the Effective Date (the "**Employment Term**")with automatic one (1) year renewals unless terminated by either party within sixty (60) days of the expiration of the applicable term (collectively, the "**Employment Term**"), subject to termination in accordance with the terms herein.

2. <u>Position and Duties</u>.

    2.1 <u>Position</u>. During the Employment Term, the Employee shall serve as the ───── Electrical Contractor for the Company, reporting to Corey Lambrecht, Wil Ralston, Chad Miles or such other Company authorized representatives as determined in the sole discretion of the Company. The Employee shall have such duties, authority, and responsibilities that are similar to his duties and responsibilities with Sabetti, consistent with the Employee's position, and other duties and responsibilities reasonably similar thereto as further provided or updated by the Company's authorized representatives from time to time in the Company's sole discretion.

    2.2 <u>Duties</u>. During the Employment Term, the Employee shall devote substantially all of his business time and attention to the performance of the Employees duties hereunder

and will not engage in any other business, profession, or occupation that would conflict or interfere with the performance of such services either directly or indirectly without the prior written consent of the Company's Board of Directors or Board of Managers (the "**Board**").

3. Compensation.

    3.1    Base Salary. The Company shall pay the Employee an annual rate of base salary of $~~[_____]~~ $115,000.00 (the "**Base Salary**") in periodic installments in accordance with the Company's customary payroll practices and applicable wage payment laws. The Employee's Base Salary shall be reviewed annually by the Company, and the Company may ~~i~~change Employee's Base Salary in its sole discretion.

    3.2    Annual Bonus. For each complete fiscal year of the Employment Term, the Employee shall be eligible to receive an annual bonus (the "**Annual Bonus**") at the sole and absolute discretion of the Company. In order to be eligible to receive an Annual Bonus, the Employee must be employed by the Company on the last day of the preceding calendar year ~~in which~~ ~~date that~~ the Annual Bonuses are ~~paid~~based.

    3.3    Fringe Benefits and Perquisites. During the Employment Term, the Employee shall be entitled to fringe benefits and perquisites consistent with those provided to similarly situated Employees of the Company.

    3.4    Employee Benefits. During the Employment Term, the Employee shall be entitled to participate in all employee benefit plans, practices, and programs maintained by the Company, as in effect from time to time (collectively, "**Employee Benefit Plans**"), to the extent consistent with applicable law and the terms of the applicable Employee Benefit Plans. The Company reserves the right to amend or terminate any Employee Benefit Plans at any time in its sole discretion, subject to the terms of such Employee Benefit Plan and applicable law.

    3.5    Vacation; Paid Time Off; Work Location. During the Employment Term, the Employee shall be entitled to ~~10 days~~ 120 hours of paid vacation days per calendar year (prorated for partial years) through April 6, 2025 in accordance with the Company's vacation policies, as in effect from time to time. Thereafter, the Employee shall be entitled to 160 hours of paid vacation days per calendar year (prorated for partial years). Prior to taking any vacation time, the Employee will provide reasonable advance notice, but no less than two weeks, to the Employee's supervisors or other authorized representatives of the Company of the Employee's intention to select certain vacation days, as well as such other reasonably requested details such that the Employee may be contacted about work-related matters. In the event that the Company objects to the Employee's selection of vacation days for reasonable business reasons, the Employee will choose alternative days and provide such notice, details and prior authorization as described in this paragraph. The Employee shall receive other paid time off in accordance with the Company's policies for Employee officers as such policies may exist from time to time and as required by applicable law. The Employee shall report regularly to the office located at ~~[_____]~~300 Old Baptist Road, North Kingstown, Rhode Island 02812~~, or such other office location as designated by the Company~~.

3.6     Business Expenses. The Employee shall be entitled to reimbursement for all reasonable and necessary out-of-pocket business, entertainment, and travel expenses incurred by the Employee in connection with the performance of the Employee's duties hereunder in accordance with the Company's expense reimbursement policies and procedures. The Employee shall be issued a Company credit card for payment of all such business expenses. In the event that the aggregate expenses in any calendar month exceed $25,000.00, to ~~To~~ be eligible for expense reimbursement beyond $25,000.00, the Employee must obtain prior written approval from an authorized Company representative.

~~3.6~~3.7  Issuance of Restricted Stock Units. The Employee shall be issued restricted stock units of the Company at a minimum of 18.75% of his Base Salary pursuant to the terms of a separate restricted stock unit agreement entered into by the Company and the Employee on the date hereof (the "**RSU Agreement**").

4.     Termination of Employment. The Employment Term and the Employee's employment hereunder may be terminated either by the Company with or without Cause (as defined below) or by the Employee at any time for any reason or for no reason. In the event that the Company terminates the Employee's employment without Cause or the Employee terminates his employment without Good Reason, the terminating party shall provide at least ninety (90) days advance written notice. In the event that the Company terminates the Employee's employment for Cause, the Company may terminate the employment immediately, except when a cure period is specifically provided, in which case the Company may terminate the Employee's employment immediately upon expiration of such cure period in the event that the Employee has not cured the condition that is the basis of the termination for Cause. In the event that the Employee terminates his employment for Good Reason, the Employee may terminate his employment by providing at least fourteen (14) days advance written notice. Upon termination of the Employee's employment during the Employment Term, the Employee shall be entitled to the compensation and benefits described in this Section 4 and shall have no further rights to any compensation or any other benefits from the Company or any of its affiliates, unless the termination is by the Employee for Good Reason (as defined below) or by the Company without Cause. For purposes of this Agreement, the term "**Good Reason**" shall mean termination of employment by Employee as a result of any of the following: (i) any material breach of this Agreement by the Company; (ii) the Company changes Employee's primary work location outside the State of Rhode Island; (iii) material change in Employee's duties or responsibilities; or (iv) the Company in any calendar year reduces Employee's Base Salary by more than five percent (5%) as of the end of the prior calendar year.

4.1     Expiration of the Term, For Cause or Without Good Reason.

(a)     The Employee's employment hereunder may expire at the conclusion of the Employment Term or be terminated by the Company for Cause or by the Employee without Good Reason, and the Employee shall be entitled to receive the following:

(i)     any accrued but unpaid Base Salary which shall be paid on the pay date immediately following the date of the expiration of the Term or

3

Employee's termination in accordance with the Company's customary payroll procedures;

(ii) reimbursement for unreimbursed business expenses properly incurred by the Employee and approved by the Company, which shall be subject to and paid in accordance with the Company's expense reimbursement policy; and

(iii) such employee benefits, if any, to which the Employee may be entitled under the Company's employee benefit plans as of the date of the expiration or Employee's termination (including, without limitation, all accrued and unpaid vacation days and other paid time off); provided that, in no event shall the Employee be entitled to any payments in the nature of severance or termination payments except as specifically provided herein.

Items 4.1(a)(i) through 4.1(a)(iii) are referred to herein collectively as the "**Accrued Amounts**."

(b) For purposes of this Agreement, "**Cause**" shall mean:

(i) the Employee's failure to perform his duties (other than any such failure resulting from incapacity due to physical or mental illness) that, following notice by the Company, is not addressed ~~and cured~~ to the reasonable satisfaction of the Company within ~~five~~ fifteen (15~~5~~) days;

(ii) the Employee's failure to comply with any valid and legal directive of the Company that, following notice by the Company, is not addressed to the reasonable satisfaction of the Company within fifteen (15) days;

(iii) the Employee's material neglect of duty or material failure to carry out job responsibilities that, following notice by the Company, is not addressed and cured within ~~five~~ fifteen (15) days;

(iv) the Employee's failure to maintain in good standing a master electrician's license;

(v) the Employee's engagement in dishonesty, illegal conduct, or misconduct, which could be expected, in each case, to be injurious to the Company or its affiliates;

(vi) the Employee's embezzlement, misappropriation, or fraud, whether or not related to the Employee's employment with the Company;

(vii) the Employee's conviction of or plea of guilty or nolo contendere to a crime that constitutes a felony (or state law equivalent) or a crime that constitutes a misdemeanor involving moral turpitude;

4

(viii) the Employee's material violation of the Company's written policies or codes of conduct, ~~including written policies~~ related to discrimination, harassment, performance of illegal or unethical activities, and ethical misconduct, all of which are subject to change at the discretion of the Company;

(ix) the Employee's material breach of any obligation under this Agreement or any other written agreement between the Employee and the Company that, following notice by the Company, is not addressed and cured within fifteen (15) days; or

(x) the Employee's engagement in breach of this Agreement in conduct that brings, or is reasonably likely to bring, the Company negative publicity or into public disgrace, embarrassment, or disrepute.

4.2  <u>Without Cause or for Good Reason</u>. In the event that the Company terminates the employment of the Employee without Cause or the Employee terminates his employment for Good Reason, then the Employee shall be entitled to receive the Accrued Amounts, as well as the following:

(a) a payment of the Employee's Base Salary for a period of ~~three~~ six (~~3~~6) months following termination (the "**Severance**")~~, provided, however, that in the case of the~~ ; and

(b) If the Employee timely and properly elects health continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**"), the Company shall reimburse the Employee for the difference between the monthly COBRA premium paid by the Employee for himself and his dependents and the monthly premium amount paid by similarly situated active Employees. Such reimbursement shall be paid to the Employee no later than the 30th day of the month immediately following the month in which the Employee timely remits the premium payment. The Employee shall be eligible to receive such reimbursement until the earliest of: (i) the twelve-month anniversary of the date of the Employee's termination; (ii) the date the Employee is no longer eligible to receive COBRA continuation coverage; and (iii) the date on which the Employee becomes eligible to receive substantially similar coverage from another employer or other source. Notwithstanding the foregoing, if the Company's making payments under this Section 4.2(b~~c~~) would violate the nondiscrimination rules applicable to non-grandfathered, insured group health plans under the Affordable Care Act (the "**ACA**"), or result in the imposition of penalties under the ACA and the related regulations and guidance promulgated thereunder, the parties agree to reform this Section 4.2(~~c~~b) in a manner as is necessary to comply with the ACA; and

~~(b)~~(c) All of the equity and/or other long-term or deferred compensation provided by the Company to the Employee, including, without limitation, the RSU Agreement, shall become fully vested and accelerate in full.

5

    4.3    <u>Death or Disability</u>.

    (a)    The Employee's employment hereunder shall terminate automatically upon the Employee's death during the Employment Term, and the Company may terminate the Employee's employment on account of the Employee's Disability.

    (b)    If the Employee's employment is terminated during the Employment Term on account of the Employee's death or Disability, the Employee (or the Employee's estate and/or beneficiaries, as the case may be) shall be entitled to receive the Accrued Amounts. Notwithstanding any other provision contained herein, all payments made in connection with the Employee's Disability shall be provided in a manner which is consistent with federal and state law.

    (c)    For purposes of this Agreement, "**Disability**" shall mean the Employee's inability, due to physical or mental incapacity, to perform the essential functions of his job, with or without reasonable accommodation, for one hundred and eighty (180) days out of any three hundred sixty-five (365) day period or one hundred and twenty (120) consecutive days. Any question as to the existence of the Employee's Disability as to which the Employee and the Company cannot agree shall be determined in writing by a qualified independent physician mutually acceptable to the Employee and the Company. The determination of Disability made in writing to the Company and the Employee shall be final and conclusive for all purposes of this Agreement.

    4.4    <u>Notice of Termination</u>. Any termination of the Employee's employment hereunder by the Company or by the Employee during the Employment Term (other than termination pursuant to Section 4.3(a) on account of the Employee's death) shall be communicated by written notice of termination ("**Notice of Termination**") to the other party hereto in accordance with Section 14. The Notice of Termination shall specify:

    (a)    the termination provision of this Agreement relied upon;

    (b)    to the extent applicable, the facts and circumstances claimed to provide a basis for termination of the Employee's employment under the provision so indicated; and

    (c)    the applicable date of termination, which shall be no less than 14 days following the date on which the Notice of Termination is delivered, unless such termination is by the Company for Cause, in which case the termination may be immediate or after expiration of any cure period provided for herein.

    4.5    <u>Resignation of All Other Positions</u>. Upon termination of the Employee's employment hereunder for any reason, the Employee shall be deemed to have resigned from all positions that the Employee holds as an officer or member of the Board (or a committee thereof) of the Company or any of its affiliates and shall execute those documents reasonably requested by the Company to evidence such.

5.  <u>Confidential Information and Restrictive Covenants</u>. As a condition of the Employee's employment with the Company, the Employee shall enter into and abide by the Company's Proprietary Information, Assignment of Inventions and Noncompetition Agreement ("**PIIA**"), the terms of which, along with the terms of this Agreement, were and are a material part of the consideration for the Company in making the Acquisition.

> **Commented [KK2]:** Please provide copy of this agreement

6.  <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement, for all purposes, shall be construed in accordance with the laws of ~~Delaware~~ the State of Rhode Island without regard to conflicts of law principles. Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in a state or federal court located in the state of ~~New York~~Rhode Island, Washington county ~~of New York~~. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

7.  <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement, together with the PIIA and RSU Agreement, contains all of the understandings and representations between the Employee and the Company pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

8.  <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the authorized representative of the Company. No waiver by either of the parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time.

9.  <u>Severability</u>. Should any provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein.

10. <u>Captions</u>. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

11. <u>Counterparts</u>. This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

12. <u>Section 409A</u>.

    12.1 <u>General Compliance</u>. This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986 ("**Section 409A**") or an exemption thereunder and shall be construed and administered in accordance with such intent. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only

be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any nonqualified deferred compensation payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service or as a short-term deferral shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, each installment payment provided under this Agreement shall be treated as a separate payment. Any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, the Company makes no representations that the payments and benefits provided under this Agreement comply with Section 409A, and in no event shall the Company be liable for all or any portion of any taxes, penalties, interest, or other expenses that may be incurred by the Employee on account of non-compliance with Section 409A.

12.2    Specified Employees. Notwithstanding any other provision of this Agreement, if any payment or benefit provided to the Employee in connection with his termination of employment is determined to constitute "nonqualified deferred compensation" within the meaning of Section 409A and the Employee is determined to be a "specified employee" as defined in Section 409A(a)(2)(b)(i), then such payment or benefit shall not be paid until the first payroll date to occur following the six-month anniversary of the date of the Employee's termination or, if earlier, on the Employee's death (the "**Specified Employee Payment Date**"). The aggregate of any payments that would otherwise have been paid before the Specified Employee Payment Date shall be paid to the Employee in a lump sum on the Specified Employee Payment Date and thereafter, any remaining payments shall be paid without delay in accordance with their original schedule.

12.3    Reimbursements. To the extent required by Section 409A, each reimbursement or in-kind benefit provided under this Agreement shall be provided in accordance with the following:

(a)    the amount of expenses eligible for reimbursement, or in-kind benefits provided, during each calendar year cannot affect the expenses eligible for reimbursement, or in-kind benefits to be provided, in any other calendar year;

(b)    any reimbursement of an eligible expense shall be paid to the Employee on or before the last day of the calendar year following the calendar year in which the expense was incurred; and

(c)    any right to reimbursements or in-kind benefits under this Agreement shall not be subject to liquidation or exchange for another benefit.

13.    Successors and Assigns. This Agreement is personal to the Employee and cannot be assigned by the Employee. Any purported assignment by the Employee shall be null and void from the initial date of the purported assignment. The Company may assign this Agreement to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise). This Agreement shall inure to the benefit of the Company and permitted successors and assigns.

14. <u>Notice</u>. Notices and all other communications provided for in this Agreement shall be given in writing by personal delivery, electronic delivery to the email set forth on the signature page, or by registered mail to the parties at the addresses set forth below (or such other addresses as specified by the parties by like notice):

    If to the Company:
    SinglePoint Inc.
    Attention:
    Wil Ralston, CEO

    If to the Employee:
    Mark Cordeiro
    875 Carr's Trail
    Greene, Rhode Island 02827

15. <u>Representations of the Employee</u>. The Employee represents and warrants to the Company that:

The Employee's acceptance of employment with the Company and the performance of his duties hereunder will not conflict with or result in a violation of, a breach of, or a default under any contract, agreement, or understanding to which he is a party or is otherwise bound. The Employee's acceptance of employment with the Company and the performance of his duties hereunder will not violate any non-solicitation, non-competition, or other similar covenant or agreement of a prior employer or third-party.

16. <u>Withholding</u>. The Company shall have the right to withhold from any amount payable hereunder any Federal, state, and local taxes in order for the Company to satisfy any withholding tax obligation it may have under any applicable law or regulation.

17. <u>Survival</u>. Upon the expiration or other termination of this Agreement, the respective rights and obligations of the parties hereto shall survive such expiration or other termination to the extent necessary to carry out the intentions of the parties under this Agreement.

18. <u>Acknowledgement of Full Understanding</u>. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT HE HAS FULLY READ, UNDERSTANDS AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT HE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF HIS CHOICE BEFORE SIGNING THIS AGREEMENT.

[SIGNATURE PAGE FOLLOWS]

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

[SINGLEPOINT __]

By_____
Name: [AUTHORIZED OFFICER NAME]
Title: [AUTHORIZED OFFICER TITLE]

EMPLOYEE

By:_____
Name: Mark Cordeiro
Address: 875 Carr's Trail
         Greene, Rhode Island 02827

Email Address:

10