# EXHIBIT G

# MINTZ & GOLD LLP
### ATTORNEYS AT LAW

600 THIRD AVENUE
25TH FLOOR
NEW YORK, NEW YORK 10016

TELEPHONE (212) 696-4848
FACSIMILE (212) 696-1231

www.mintzandgold.com

STEVEN W. GOLD
STEVEN G. MINTZ*
JEFFREY D. POLLACK*
ELLIOT G. SAGOR
IRA LEE SORKIN
LON JACOBS
STEVEN A. SAMIDE
SCOTT A. KLEIN
TERENCE W. MCCORMICK***
ROBERT B. LACHENAUER
ROGER L. STAVIS
CHARLES A. ROSS**
RICHARD M. BRESLOW
BARRY M. KAZAN*
CRAIG D. SPECTOR*
KEVIN M. BROWN
ALEXANDER H. GARDNER
HEATH LORING
PETER GUIRGUIS
ANDREW R. GOTTESMAN
MATTHEW S. SEMINARA
JULIA B. MILNE
RYAN W. LAWLER*
ANDREW A. SMITH
AMIT SONDHI
BRETT JOSHPE
MICHAEL MOONEY

SENIOR COUNSEL
JACK A. HORN
NOREEN E. COSGROVE
TIMOTHY J. QUILL, JR.

ASSOCIATES
ADAM K. BRODY
ANDREW E. STECKLER
ALEX J. OTCHY*
PHILIP I. TAFET
CARLI M. ABERLE
ZACHARY J. TURQUAND
SITIE "ESTHER" TANG

OF COUNSEL
HONORABLE VITO J. TITONE (dec.)
  (NY State Court of Appeals 1985-1998)
HARVEY J. HOROWITZ (dec.)
HONORABLE HOWARD MILLER
  (NY Appellate Div. 1999-2010 [ret.])
ALAN KATZ
ERIC M. KUTNER
BRIAN T. SAMPSON
ERICA NAZARIAN
TARA SHAMROTH
JARED VAN VLEET
ANDREW P. NAPOLITANO✝

✝ADMITTED TO PRACTICE ONLY BEFORE ALL
  COURTS IN NEW JERSEY AND ALL FEDERAL COURTS
  IN NEW YORK CITY

*ALSO ADMITTED IN NEW JERSEY
**ALSO ADMITTED IN FLORIDA
***ALSO ADMITTED IN CALIFORNIA

August 26, 2023

***<u>Privileged & Confidential Settlement Communication Pursuant to Federal Rules of Evidence 408, N.Y. C.P.L.R. § 4547 and All Other Applicable State and Local Laws</u>***

***<u>Sent Via Email to jyw@riw.com and ems@riw.com</u>***

Jeremy Y. Weltman
Eric Sigman
Ruberto, Israel & Weiner
255 State Street, 7th Floor
Boston, MA 02109

  Re: **<u>Demand Letter Regarding LOI for Purchase of Stock in Sabetti Construction, Inc., d/b/a Newport Solar</u>**

Dear Jeremy and Eric:

My client is in receipt of your demand letter dated August 25, 2023 (the "Demand Letter") in which you conveniently misrepresent and distort the narrative surrounding the proposed acquisition of the assets of Sabetti Construction, Inc., d/b/a Newport Solar ("Newport Solar") by my client, SinglePoint, Inc. ("SinglePoint"). As an initial matter, I am concerned that despite

MINTZ & GOLD LLP
ATTORNEYS AT LAW

August 9, 2023
Page 2

your firm's knowledge that my client is represented by counsel, you felt it appropriate to send the Demand Letter directly to my client. All communications should be directed to my attention moving forward. Moreover, the Demand Letter is riddled with both factual and legal distortions, not to mention a profound misunderstanding of how transactions work. Be advised that any actions brought against my clients will be met with the strongest possible response, including multiple counterclaims.

As you rightly note in the Demand Letter, SinglePoint and Newport Solar entered into a Letter of Intent on January 9, 2023 (the "LOI") that provided an exclusive negotiating period and, with certain exceptions, including the exclusivity provision, as well as the issuance of $50,000 of stock, was "largely non-binding." You also correctly note that the parties entered into negotiations of a definitive asset purchase agreement (the "Purchase Agreement"), although your Demand Letter seems to incorrectly imply that the terms of this Purchase Agreement were binding on the parties when, in fact, the parties never executed the Purchase Agreement.

Your Demand Letter proclaims that when it became clear that SinglePoint would not be able to close on May 10, 2023—a date that was legally relevant only insofar as it represented the end of the exclusivity period set forth in the LOI, not a date upon which SinglePoint had any legal obligation to close prior to—SinglePoint "affirmatively represented that its failure to close was due solely to challenges in financing at this point, but it assured Sabetti of its continued desire to close the funding gap." First, we do not concede the accuracy of any of your characterizations about what SinglePoint represented or assured your clients. What I can confirm, however, is that my clients acted in good faith at all times and used diligent efforts to obtain financing for the proposed transaction on workable commercial terms.

You also state that "Single Point had not only failed to secure necessary financing, but also failed to submit necessary filings to the SEC for the would-be transaction – calling into question its true motive behind what was starting to appear as a charade being perpetrated by Single Point" [sic]. First, it is unclear what filings you are referring to, but SinglePoint acted at all times in accordance with its legal and regulatory obligations. Second, your accusation that SinglePoint had some ulterior motive and was perpetrating a "charade" is absurd and non-sensical. What did SinglePoint have to gain by continuing to work towards a closing with your client while incurring deal expenses and also issuing Newport additional compensation?

On that point, your seeming objection to the nature of the Second Amendment to Letter of Intent dated June 22, 2023 (the "Amended LOI"), while opportunistic, is nonetheless perplexing. First, your assertion that SinglePoint's obligation to issue your client SinglePoint stock "was not fulfilled" is simply wrong. SinglePoint did indeed issue your client the stock. Unfortunately, market conditions beyond my client's control have resulted in the stock price declining since it was issued to your client. In fact, in reaction to SinglePoint's stock price falling, your client stated to my client, in sum and substance, that "this is not what we signed up for." It is unclear what power your client believes SinglePoint has to control the price of its stock, but your client

MINTZ & GOLD LLP
ATTORNEYS AT LAW

August 9, 2023
Page 3

has been compensated on two separate occasions with SinglePoint stock, and in neither case did those issuances come with guarantees regarding the price of these shares.

The Second LOI is also crystal clear. Section V "REMEDY FOR FAILURE TO CLOSE" states, "Unless caused by Newport's failure or refusal to close the Transaction by the Closing Date, in the event that SinglePoint does not close the Transaction by the Closing Date, SinglePoint shall pay to Newport $100,000.00 (the "Break Up Fee") within thirty (30) business days, **which shall be Newport's sole and exclusive remedy for any failure to closing the Transaction**."(emphasis added). Moreover, Section VI states that "The Parties agree that the provisions of this Second Amendment are binding upon the parties."

Your suggestion that Newport Solar has any claims beyond the consideration described in the Second LOI is frivolous and, if pursued, would be sanctionable. Moreover, in fact, it was your client that was a proximate cause of SinglePoint's inability to close by the date set forth in the Amended LOI. Although the Purchase Agreement was never executed, one of the conditions to the Buyer's obligation to the close the transaction in Section 7.02 was "enter[ing] into an acceptable contract of employment with Mark Cordeiro." In fact, I sent a draft of the Cordeiro Employment Agreement to Eric Sigman on June 6, 2023. However, more than a month later, two days prior to the targeted closing date set forth in the Amended LOI, Mr. Sigman sent back material changes to the draft Employment Agreement that Mr. Cordeiro's attorney was requesting at the last minute.

Any assertions that my client did anything other act in good faith at all times and use diligent— indeed, nearly round-the-clock—efforts to obtain reasonable financing terms is simply wrong. In fact, up until the day that you delivered the Demand Letter to my client, SinglePoint remained intent on closing the transaction and continuing to explore mutually beneficial solutions that could even result in your clients receiving more for Newport Solar in the end. SinglePoint has continued to communicate its intentions and desire to close the transaction to your client's business broker, Sarah Grossman of Bay State Business Brokers. However, she recently informed my client that Newport Solar would seek to raise the agreed upon price, an indication that it was your client and its agents that were acting in bad faith.

Please consider this letter a pre-suit demand under Chapter 598 of the Nevada Revised Statutes as well. Again, any claims against my client will result in multiple counterclaims against your client. In addition, we reserve the right to file claims against Ms. Grossman and Bay State Business Brokers and to seek sanctions for this utterly frivolous shake-down effort. With all of that said, my client is willing to put emotions aside and rationally discuss a path forward that could be mutually beneficial to all parties involved. I will await your prompt response. This is written with all rights reserved.

MINTZ & GOLD LLP
ATTORNEYS AT LAW

August 9, 2023
Page 4

Very truly yours,

Brett Joshpe